UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALLACE NEWELL PELTON, | ) | CIVIL NO. 4:19-CV-1164 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | | |
| Defendant | | |

<u>MEMORANDUM OPINION</u>

## I.     INTRODUCTION

Plaintiff Wallace Newell Pelton ("Plaintiff"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision is AFFIRMED.

II.     BACKGROUND & PROCEDURAL HISTORY

On December 13, 2015, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 170, 172).  In these applications, Plaintiff alleged he became disabled as of October 20, 2015, when he was 57 years old, due to the following conditions: depression, manic depression, anxiety, bi-polar disorder. (Admin. Tr. 197). Plaintiff alleges that the combination of these conditions affects his ability to remember, complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 229). Plaintiff graduated from high school and completed some college. (Admin. Tr. 198). Before the onset of his impairments, Plaintiff worked as a machine helper and department manager. (Admin. Tr. 24).

On March 9, 2016, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 90, 95). On April 8, 2016, Plaintiff requested an administrative hearing. (Admin. Tr. 99).

On January 8, 2018, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge John A. Fraser (the "ALJ"). (Admin. Tr. 33). On April 30, 2018, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 26). On June 25, 2018, Plaintiff requested

review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 161-63).

On May 6, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-3).

On July 9, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id.* As relief, Plaintiff requests that the Court grant "such relief as may be proper." *Id.*

On September 4, 2019, the Commissioner filed an Answer. (Doc. 9). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id.* Along with his Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 10).

Plaintiff's Brief (Doc. 17) and the Commissioner's Brief (Doc. 18) have been filed.  This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42

U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[1]

To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age,

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on April 30, 2018.

education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work

experience and RFC. 20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION(S)

In his April 2018 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between October 20, 2015 (Plaintiff's alleged onset date) and

April 30, 2018 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17, 26). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disease of the cervical/lumbar spine; asthma/chronic obstructive pulmonary disease (COPD); bipolar disorder; anxiety/unspecified anxiety disorder; and alcohol abuse. (Admin. Tr. 17). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 404.1567(c) and 20 C.F.R. § 416.967(c) subject to the following additional limitations:

> The claimant is limited to being able to tolerate occasional interactions with public, supervisors and co-workers. The claimant is limited to being able to tolerate one or two changes per week in an otherwise stable work routine. The claimant is limited to being only occasionally exposed to extreme cold and pulmonary irritants.

(Admin. Tr. 20).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 24). At step five, the ALJ found

that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 24-25). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: laborer, stores (DOT#922.687-058), hand packager (DOT#920.587-018), and general laborer (DOT#589.686-026). (Admin. Tr. 25).

B.   WHETHER THE ALJ ERRED IN DENYING PLAINTIFF'S APPLICATION FOR SOCIAL SECURITY BENEFITS

Plaintiff argues that the ALJ erred because (1) the ALJ failed to properly evaluate Plaintiff's severe mental impairments and the medical opinion evidence; and (2) the ALJ failed to explicitly mention Plaintiff's extensive work history.

*1. The ALJ Did Not Err in Its Evaluation of the Opinion Evidence of Record*

Plaintiff challenges the ALJ's evaluation of Plaintiff's severe mental impairments and the medical opinion evidence. Plaintiff argues that the ALJ did not sufficiently explain why he assigned the medical opinion of Justin Bauer, LCSW, "little weight."

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20

C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b); 20 C.F.R. § 416.927(b).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 416.927(a)(2) (same as 20 C.F.R. § 404.1527(a)(2)); 20 C.F.R. § 404.1527(c)(2) (explaining what is required for a source's opinion to be controlling); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. § 404.1527(c)(2)).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any

other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. See 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. § 404.1527(c)(2)). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Bauer's opinion is not entitled to controlling weight, because Bauer is a therapist. A therapist is not an acceptable medical source. Opinions from non-acceptable medical sources are not entitled to controlling weight. An acceptable medical source is a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor)
(2) Licensed psychologist, which includes:
   (i)   A licensed or certified psychologist at the independent practice level; or
   (ii)  A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the

same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual activity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only.

20 C.F.R. § 404.1502; 20 C.F.R. § 416.902.

The Commissioner's regulations direct that non-acceptable medical opinions should be considered under the same factors used to evaluate opinions by acceptable medical sources. 20 C.F.R. § 404.1527(f); 20 C.F.R. § 416.927(f). However, "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case." *Id.* The ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning" because such opinions may affect the outcome of the case. *Id.*

Plaintiff specifically argues that the ALJ erred when he assigned "little weight" to Bauer's medical opinion. Plaintiff argued that:

It cannot be reasonably disputed the opinion of Mr. Bauer (1) establishes *far* greater limitations than the ALJ found; and (2) establishes the Plaintiff met his burden of proof to come forward with evidence demonstrating that he is "disabled" pursuant to the Agency's definition.

(Doc. 17, p. 16).

Plaintiff goes on to argue that the ALJ assigned "little weight" to Bauer's opinion while relying on his own lay interpretation of medical evidence to support such an RFC finding. *Id.* at pp. 18-19. Further, Plaintiff argues that the ALJ should have given Bauer's opinion more weight as a "treating source." *Id.*

Defendant does not specifically address the ALJ's treatment of Bauer's opinion.[2] Instead, Defendant argues, generally, that the ALJ's RFC determination was supported by substantial evidence. Defendant does not discuss Bauer's opinion in his brief.

Plaintiff began treatment with Bauer in October 2016. (Admin Tr. 593). In October 2016, Bauer noted that Plaintiff was anxious and showed ambivalence towards working—as he had turned down three jobs due to anxiety and fear of having a panic attack. *Id.* Bauer also noted that Plaintiff had a polite demeanor and was active throughout the therapy session. *Id.* In November 2016, Bauer again noted

---

[2] Defendant references treating physicians twice. Each time Defendant states that ALJs make the determination of a claimant's RFC—not a treating or other physician. (Doc. 18, pp. 6-7).

Plaintiff's anxiety, particularly with small things like finding a parking spot or social interaction. (Admin. Tr. 599). In December 2016, Bauer noted that Plaintiff was calm and focused. (Admin. Tr. 605). Bauer also noted that Plaintiff was interested in gaining employment and had even set a goal of gaining employment in the next six to twelve months. *Id.* In his January 2017 opinion, Bauer noted that Plaintiff was focused, attentive, and active but continued to struggle with anxiety and panic attacks. (Admin Tr. 608). Bauer similarly noted in his March 2017 opinion that Plaintiff continued to have negative thoughts like "I could never do that" when discussing his problems and goals. (Admin. Tr. 618).  In his April 25, 2017 opinion, Bauer stated that "[d]espite the maintenance of his mania and depression with the medications, [Plaintiff] continues to experience anxiety and panic attacks on a regular basis which prevent him from pursuing employment or new social activities." (Admin. Tr. 621). In May 2017, Bauer noted that Plaintiff appeared less anxious. (Admin. Tr. 624). By July 2017, Bauer noted that Plaintiff reported maintaining stable mood by managing his medication and keeping to a routine schedule. (Admin. Tr. 627). Bauer also noted that Plaintiff expressed stress over one of his medications being discontinued. *Id.* In August 2017, Bauer noted that Plaintiff continued to experience stress and anxiety—particularly regarding social events or work. (Admin. Tr. 630). In September 2017, Bauer noted that Plaintiff reported

maintenance of a stable mood and appeared optimistic about his future. (Admin. Tr.

633). Plaintiff also reported that he avoids anxiety producing situations such as work.

*Id.* In October 2017, Bauer again noted that Plaintiff exhibited signs of anxiety and

stress. (Admin. Tr. 636).

In his opinion, the ALJ summarized Plaintiff's mental health treatment and

reports, concluding that "the undersigned finds the above mental limitations." *Id.*

However, the ALJ did not conclude that the record supported greater mental

limitations. *Id.* As support for this conclusion regarding Plaintiff's capabilities, the

ALJ stated:

> [D]uring the relevant period, the claimant has reported or has been
> reported engaging in activities that are not consistent with the presence
> of a greater limitations than those found in the above residual functional
> capacity. For example, in a January 2016 Adult Function Report, the
> claimant reported during his typical day that he provided care for his
> mother. He also reported that he was able to drive an automobile and
> went to the store at night. The claimant further indicated that he was
> able to pay bills, count change, handle a savings account, and use a
> checkbook/money orders (Exhibit 5E). At a March 3, 2016 consultative
> examination, the claimant was reported as being able to dress, bathe,
> and groom himself. Further, the claimant reported being able to
> cook/prepare food, do general cleaning, do laundry, shop, drive, take
> public transportation, and manage money (Exhibit 2F). Further, during
> the relevant period, the claimant was reported as looking for
> employment and providing care to his mother along with helping his
> brother with transportation (Exhibit 3F and 6F). At the January 2018
> disability hearing, the claimant testified that he drove an automobile
> three to four times per week. The claimant also testified that he utilized
> a computer and was able to send text messages with a cell phone. He

reported that he got along with his neighbors, was able to do laundry, run a vacuum cleaner, and go grocery shopping.

(Admin Tr. 21).

Regarding Plaintiff's use of medication, the ALJ stated:

Along with these reported capabilities, during the relevant period, the claimant has reported and/or has been reported with improvement with medication or medication effectiveness. For example, on January 7, 2016, the claimant reported that "he has been doing much better" since seeing the doctor (Exhibit 3F35-37). On February 9, 2016, the claimant's medications were reported as being "extremely useful" and that the claimant seemed "to be doing fairly well" (Exhibit 3F29-31). On March 1, 2016, the claimant's anxiety was reported as being much improved on medications (Exhibit 3F26-28). On July 5, 2016, the claimant's "mood swings and associated symptoms" were reported as having "been doing very well" with regards to the claimant's medications (Exhibit 6F1-3). On October 25, 2016, the claimant reported feeling "pretty good" overall and felt that his current circumstances were allowing his anxiety to be minor (Exhibit 6F22-24). On November 29, 2016, the claimant was reported as finally finding a combination of medications that worked (Exhibit 6F28-30). On December 12, 2016, the claimant reported that his medications were effective (Exhibit 6F31-33). On June 18, 2017, the claimant was reported as "continuing to do well" and having no reported side effects (Exhibit 6F80-82).

(Admin. Tr. 21-22).

The ALJ then concluded that the medical evidence was not consistent with a higher level of mental limitations:

Finally, it is noted that examinations of record are not consistent with the presence of greater mental limitations. For example, on March 3, 2016, the claimant exhibited intact attention/concentration, intact recent/remote memory, average cognitive functioning, neutral mood,

Page 17 of 22

and adequate social skills (Exhibit 2F). On October 4, 2016, along with being reported as taking care of his mother full time, the claimant was observed as being pleasant with a stable mood, appropriate affect, clear thought process, good judgment, and good insight (Exhibit 6F68-70). Along with that, on November 29, 2016, the claimant was observed with stable mood, good judgment/insight, clean/neat appearance, cooperative behavior, appropriate affect, and clear thought process (Exhibit 6F71-73). On January 24, 2017, the claimant exhibited cooperative behavior, stable mood, clear thought process, and good insight/judgment (Exhibit 6F80-82). In light of these examinations, the above reported capabilities, and reports of improvement/medication effectiveness, the undersigned finds the above mental limitations.

(Admin. Tr. 22).

Regarding the medical opinion of Bauer, the ALJ stated:

It is noted that the claimant's therapist reported that the claimant "continues to experience anxiety and panic attacks on a regular basis which prevent him from pursuing employment or new social activities." (Exhibit 6F47-49). To the extent that this statement represents an opinion of functionality, the undersigned has accorded it little weight. Such a conclusion is inconsistent with the full longitudinal record in light of the above examinations, the above reported capabilities, and reports of improvement/medication effectiveness.

(Admin. Tr. 22).

Plaintiff challenges the ALJ's decision to assign Bauer's opinion little weight.

However, Bauer's opinion is not supported by or consistent with the record.

Bauer does not meet any of the requirements of an acceptable medical source,

and thus, is not entitled to controlling weight. Because no opinion was entitled to

controlling weight, the ALJ was required to weigh the factors from 20 C.F.R. §

404.1527(c) and 20 C.F.R. § 416.927(c) to determine how much weight to give the non-controlling medical opinions. As stated above, the ALJ is directed to consider the following: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.

As stated above, the ALJ discussed how the medical evidence demonstrated Plaintiff's mental conditions were improving, even by Plaintiff's own description of his conditions. The ALJ highlighted Plaintiff's attention/concentration, stable mood, and appropriate affect at the March 2016, October 2016, November 2016, January 2017, and June 2017 appointments to support his conclusion. The ALJ also noted that Plaintiff continued to engage in activities that are inconsistent with the conclusion that additional mental limitations are necessary for Plaintiff's RFC determination. The ALJ highlighted that Plaintiff cares for his elderly mother, drives, pays bills, counts change, and handles savings and checking accounts. Further, the ALJ noted that Plaintiff was able to dress, bathe, groom himself, cook, clean, shop, wash clothes, and take public transportation.

The ALJ provided his reasoning as to why he found Bauer's opinions to be inconsistent with the record. As stated above, supportability and consistency of a medical opinion with the underlying record are to be considered by the ALJ when determining how much weight to assign to a medical opinion. The ALJ clearly considered whether Bauer's medical opinion was consistent with or supported by the record. The ALJ noted improvements in Plaintiff's mood and affect, along with his ability to engage in activities like taking care of his mother, driving, and shopping. Thus, the ALJ's decision to assign little weight to Bauer's medical opinions was not in error. Remand is not necessary regarding the ALJ's handling of Bauer's opinion.

2. *The ALJ Did Not Err By Failing to Explicitly Mention Plaintiff's Extensive Work History*

Plaintiff also challenges the ALJ's credibility findings. Plaintiff stated that his arguments related to the ALJ's RFC determination and treatment of the medical opinions are "inextricably intertwined" to his arguments related to the ALJ's credibility assessments. I conclude that the ALJ did not err in making his credibility assessments for the same reasons I concluded that the ALJ did not err during his RFC determination. Restatement of that analysis is not necessary.

Plaintiff also argues that the ALJ failed to acknowledge Plaintiff's strong work history. Plaintiff notes that Plaintiff had 151 consecutive quarters of covered

earnings between 1976 and 2013. Defendant argues that the ALJ is not required to undertake an exhausted discussion of the record. Defendant further argues that Plaintiff work history is part of the record, which the ALJ considered in full.

Plaintiff admits that his work history alone is enough to deem him credible or enhance his credibility. This Court has stated:

> [T]estimony of a claimant with a long, productive work history will be given substantial credibility. A claimant's work history is, however, one of the many factors the ALJ is to consider in assessing an individual's subjective complaints, 20 C.F.R. § 404.1529(c)(3), the ALJ is not required to equate a long work history with credibility. *See Christil v. Astrue*, 2008 WL 4425817, *12 (W.D. Pa. Sept. 30, 2008). Furthermore, it is well established that the ALJ need not address every piece of evidence in the record. *Hurr v. Barnhart*, 94 Fed. Appx. 130, 133 (3d Cir.2004); *see Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir.2004) (An ALJ may not reject pertinent evidence without explanation, but does not need to cite all evidence the claimant presents).

*Freeman v. Colvin*, No. 4:14-CV-1581, 2015 WL 3739077, *7 (M.D. Pa. 2015)

The ALJ's decision was based on his review of the entire record. That record includes Plaintiff's employment history. The ALJ was not required to explicitly discuss each part of the record in reaching his decision. The ALJ concluded that Plaintiff's claim of being disabled was not consistent with or supported by the record. The ALJ demonstrated that his conclusion was supported by the record. The fact that the ALJ did not explicitly mention Plaintiff's long work history does not, by itself, warrant remand. The decision of the ALJ should be affirmed.

Page 21 of 22

V.     CONCLUSION

Plaintiff's request for reversal of the ALJ's decision and remand of the case

will be DENIED as follows:

(1)     The final decision of the Commissioner will be AFFIRMED.

(2)     Final judgment will be issued in favor of the Commissioner of Social
Security.

(3)     An appropriate order shall issue.

Date: June 4, 2020                          BY THE COURT

                                            *s/William I. Arbuckle*
                                            William I. Arbuckle
                                            U.S. Magistrate Judge